Good afternoon, and may it please the Court, Emily Grondyke on behalf of Petitioner Appellants Jason Green and Lynette Pennington. Your Honors, the case before the Court today is one that has troubled and disturbed many judges that have looked at it, and yet those courts felt prohibited from providing any The Supreme Court has made very clear, has clearly established, in Chambers Excuse me, Counsel, help me on something relating to what you just said. The California statutes, for us to grant relief in 2254, we really have to deal with Supreme Court holdings, as you know. And you cited, correctly, a number of decisions, including by the Supreme Court saying they troubled, basically, when prosecutors judge shopped. The facts here seem quite clear, and admitted at the time by the prosecutor, that he dismissed and refiled in another venue because he was judge shopping. However, I can't find a Supreme Court holding that says that judge shopping by a prosecutor, or dismissing and refiling in another venue in order to get a more favorable judge, is a denial of due process or is otherwise unconstitutional. Is there such a holding, and does it matter if there is it? No, Your Honor, there is not such a holding, at least not one that I've been able to locate. The best cases I've been able to locate are the ones in the brief, and what I would say about that is that what the Supreme Court did clearly establish in Chambers is that the contours of the federal constitutional right due process are not constrained by the boundaries of state procedural laws. And so what the court did in Chambers is it said, yes, we see that these state laws were followed, check, check, check. Nonetheless, the result, what happened in this case, was not fundamentally fair. And that's where the due process violation comes in. So when the California Court of Appeal analyzed this question, I think we can understand its decision in one of two ways. I think it's possible to look at that case. What it said is that it could not find a prosecutor's permissible refiling as sufficiently problematic. I think we can interpret that in one of two ways. On the one hand, we could look at that as the state court failing to decide the federal constitutional question. That doesn't seem a reasonable reading of the decision at all. Well, nowhere, if what we're looking at is the standard asking the question of whether what happened comports with fundamental fairness, it's not clear to me in this reading that that's what the court decided. But I think there's another way to read the state court decision, which is that it appeared to be viewing the federal constitutional right as coextensive with the statutory rights. And that's an unreasonable application of what happened in Chambers. Do you have the specific page? Yes, Your Honor. It's in the first volume of the ERs from page 66 to page 71. That decision does recognize that Fourth Amendment due process is violated when something infects the trial with such unfairness. But its ultimate conclusion is we cannot brand a permissible refiling as misconduct sufficiently outrageous to warrant retrial. And why should we? Well, Your Honor, what the DA managed to do here, as I think you recognize, is exploit an uneven playing field. The DA got a very unfavorable evidentiary ruling and gamed the system to get to a different court and try again and succeeded at that. And I think if we compare the trial that happened to the trial that would have happened, it's very clear. Well, but the judge in the second case, Judge Mele, presumably was well aware that there had been an adverse ruling, correct? Yes, Your Honor. And had access, presumably, to Judge Dabney's ruling and seen it and just decided to go a different way, and on reconsideration, as it were, just decided partly, partly he affirmed the rulings, reached the same conclusion, but partly didn't. Why is that? Is there fundamental unfairness? If you probably want to judge with eyes open, knowing what the scope of what the history of the case has been, decides to apply the law in the particular way that he did. I think here, because we're not dealing with a straight evidence question, admissibility of evidence, which would be attacking that decision, what we're arguing is unfair is the process here. I think the unfairness would be true if truly the prosecutor was sort of pulling the strings, gaming the system in the way that you punch a button and you get the outcome you want. I mean, yes, the prosecutor punched a button and got a different decision maker, but that's a fair, neutral decision maker who then looked at the law and looked at the prior decision. If the fact had been concealed from the second judge, then that might be unfair. But to have a system where, you know, you can't engineer a change in the judge, and the judge with eyes open just reaches a different conclusion, why is that fundamentally unfair and inconsistent with due process? Because only the district attorney has the opportunity to take that chance. And what I would say, Your Honor, is that the DA said that the ruling of the first court would effectively gut its case. So in taking that chance, it wasn't taking much of a chance at all. The DA had nowhere to go but up, and that's exactly what happened. Why is that outrageous, though? I mean, lawyers always and quite correctly exploit the legal opportunities that are not unethical or dishonest in order to gain advantage for their client. And sometimes they step over the lines where it is unethical or dishonest, and then there's a correction imposed. Even there, it may not be outrageous conduct. Hardly anything falls into the set on facts that constitute outrageous conduct under the Supreme Court's decisions about it. But why wouldn't this be at worst sharp practice that troubles courts rather than outrageous conduct? I think in this case, Your Honor, I have two thoughts on that. First is that a prosecutor is not simply an advocate who's looking to exploit every legal technicality to the advantage of their client. A prosecutor's obligation is to do justice. The second thing I would say, Your Honor, is just turning back again to the unequal playing field. That's all I can point to as the unfairness in this case. Suppose the state had a statute, you know, the legislature was concerned about suppression motions, and they had a statute where they thought the courts of appeals were overburdened. And they said, you know, if the government loses a suppression motion, it can file for reconsideration and request a different judge to review that. Would that violate due process? I'm not – I don't know, Your Honor. Like, it certainly would be setting up under statute an even more uneven playing field than what we're dealing with here. I suppose it would depend on whether defendants could equally have their – have a suppression motion reconsidered by another judge. Now, do you know whether, you know, there's a right to a peremptory challenge in state court? And as I recall, it applies if you get a reversal, you get a fresh peremptory. If the government on remand from a reversal of an adverse ruling papers the judge on remand, does that violate due process and place the card to get a different decision maker at that point? So I'm no state practitioner. I'm not totally up to speed on the details of those judicial peremptories. But I know that there are time limitations for when a party can exercise those, and I'm not sure that it's possible that a party would be able to exercise it as late in the game as this or as late in the game as a motion limiting. I guess what I'm getting at with this line of questioning is that having mechanisms in state law to change the decision maker do not – I'm having a hard time seeing how that's fundamentally unfair or violates due process so long as the new decision maker is fair, neutral, and aware of all the facts and the history and the law of the case concerns. The only thing I can circle back to on the question of the state judicial peremptories is that those are equally available to both parties. So that's a fundamental difference between that situation and this one. This was a situation where the defendants were stuck with where they were charged. They had no authority to change courtrooms, to make decisions after they learned what would be the evidence against them or what would be the rules of the game. Only the district attorney had that. A lot of rules are one-sided, though. I mean, on the civil side, for example, plaintiffs will try to file in a particular county in Texas if they can gin up any kind of excuse for it because it's really good for plaintiffs. I had an air crash case once where everybody wanted to get before a particular judge in Los Angeles because he knew air crash law in practice. And oh, we used to like state court better than federal court generally, so we would try as hard as we could to figure out some way to avoid pleading the case in a way that would create complete diversity. You just do whatever you can in order to get advantage. And the things you can do often are one-sided, like where to file a case, for example. I don't doubt that prosecutors, given the opportunity, will file in a county where they think they'll do better or that defendants will try to get as much advantage out of the timing of proceedings as possible. What I'm doing is having trouble connecting the level of unfairness you described with the criteria required for us to do anything about it. Yes, Your Honor. The only distinction I would make here, I know there are situations where parties do try to forum shop. All of them. But in this situation, what we have is not merely. The district attorney was gaming the system after learning not just the court, but exactly what the court's evidentiary rulings were going to be at trial. Parties were quite far along the jury was going to be called in, and only then did the prosecutor dismiss and refile. I would like to save maybe two minutes of my time for rebuttal, but I can answer another. I think this is a good time to apologize. Thank you, Your Honor. Oh, I do have one more question that I need to ask if that fits. Judge Plattford doesn't mind. Yes. I did mean to ask you about prejudice. It looks like there was overwhelming evidence from the intercepted communication of the note the defendant tried to eat that they planned to kill this witness, have him hexed because he was a snitch. I'm thinking he would have lost regardless of whether that evidence came in about the previous murder. So. Prejudice. Your Honor, the trial that happened let not just one additional murder in. There was a whole series of murders, three murders, that came in as a result of this changed decision, a whole series. And that functioned really as like pattern and practice evidence against both Ms. Pennington and Mr. Green. So when we view that in terms of the prejudice against them. Without the evidence, the government's case could be, why would he kill a fellow blood dealer and fraternity brothers? And the evidence going the other way would be, he'd kill him because he was a snitch and they kill snitches. And here's the evidence that they kill snitches. But there was so much other evidence. So basically, the defendant putting out a contract on this, on the victim, that I don't know if they even needed it. Well, Your Honor, specifically as to Mr. Green, the DA certainly thought he needed it. He said that if the evidence was excluded, it would effectively gut his case, particularly against Mr. Green. And I think the reason for that is, yes, there's the wiretap. And yes, there are those pieces of paper. I'll note, Ms. Pennington wasn't found with any notes. So the conspiracy case is even weaker against her. But the statements on that wiretap I think could be construed as a bit ambiguous. The purported gang expert didn't even know all of the terms in them. And if this tap was being litigated at a trial when there hadn't been a long story of what gangs do and how they do it, I think the defense counsel would have been able to argue that there was ambiguity in the language, that this might have been a situation where they were discussing retaliation in some way that wasn't killing someone that might have been beating him up. And all of this comes together with the fact that the state relied on those prior murders to create the motive for the conspiracy. Mr. Green was not tied to the Alton Batiste homicide in any way. Ms. Pennington was somewhat weakly tied to it if we exclude all of the prior evidence. And so what would their motive be to kill a fellow gang member in that situation? And I think there would be a strong argument for the defense to make on that point. Thank you. Sorry. Over. No problem. We'll give you a couple minutes for rebuttal. Now we'll hear from the state. Good afternoon, Your Honors. I'm Nancy Ladner. For respondents, may it please the Court, I'd like to start by clarifying some characterizations by counsel. First, petitioners cannot show that the refiling resulted in a more favorable evidentiary ruling. Both judges excluded the same evidence. The trial judge did not admit any evidence that had been previously excluded or deemed irrelevant by the prior judge. They excluded the same evidence in regarding the Powers murder, which was offered to show motive. Judge Dabney did say it may be relevant to show motive, but deferred ruling on that evidence until holding a hearing. And that hearing never happened, and he never made that ruling. It's entirely speculative to say the way the trial would have happened. When Judge Dabney never held that ruling, Judge Lomelli only determined what to admit about that evidence after holding two extensive hearings, both about 30 pages of transcript each, and only after that argument did he decide what to admit. Just to clarify, that point that you just raised goes less to the existence of kind of fundamental unfairness and more to prejudice. You're just saying that even if this were deemed fundamentally unfair? That's correct, Your Honor. There's been a lot of talk about the DA's motive, and I can address that next. But I'd like to reiterate that the touchstone of prosecutorial misconduct is not the culpability of the prosecutor, but the fairness of the trial. And here, to make a prosecutorial misconduct claim, petitioners have to show that the refiling resulted in a fundamentally unfair trial. It caused the trial to be fundamentally unfair. Putting aside the prosecutor's action, they can't prove the rendered, and they can't prove the fundamentally unfair. The trial was fair, it was conducted in an appropriate judicial district, and relevant evidence related to motive was admitted against them. They don't allege otherwise. Well, are you suggesting that if the – I'll just say that the prosecution's ploy had been more successful in the sense that – because as I understand it, the prosecutor did try to get the first judge's rulings overturned, right? I wouldn't agree with that either. When the case was dismissed and refiled, all prior orders were vacated. All parties brought all prior motions. Let me just – it looks like I'm going over the language. I'm saying that the prosecutor got an adverse ruling because certain evidence that he or she wanted admitted was excluded by the first judge, right? Correct. When the case got refiled and never before a second judge, that prosecutor tried to get that second judge to revisit the earlier ruling and say, no, no, no, please let it in, right? Sure. And you're just saying, well, as it turns out, the second judge agreed with the first judge and kept out all of the same evidence. Am I understanding that correctly? Yes, that's correct. Okay. But what if that had not been the case? What if the second judge had let all the evidence in and then you're saying, oh, well, in that scenario there might well be fundamental unfairness? No, Your Honor, because it doesn't violate the Constitution. It isn't fundamentally unfair for relevant evidence to be admitted against defendants. They may not like that evidence. They didn't want that evidence, but the trial court, in his discretion, was permitted to find that it was relevant. They're not entitled to the previous judge's rulings when the case was dismissed, or in this case, perceived rulings, because there were no rulings on the powers evidence, at least. Well, what about the one-sidedness of that? Why isn't that unfair? I would understand a system in which a defendant who tries to exclude evidence and that evidence gets admitted and it's, you know, Your Honor, you've gutted my defense. What am I supposed to do if the defendant had the opportunity to go to a different judge and get a revisitation of that ruling? I guess I could understand a system in which both sides had that opportunity. Why is it fair when only the government gets that opportunity? I think there's a distinction between fairness and fundamental fairness because the action, whether it's – whether it had a bad motive or whether or not it was done to circumvent a ruling, which the state court found that it was not, there's a causation element. It has to render the trial fundamentally unfair. And the trial itself was fair. The action is not structural error. What about the finding that it was not done to circumvent a ruling? That phrasing comes from Judge Abzug's order where he says it was dismissed in response to the evidentiary ruling, but that it hadn't been shown that it was done to circumvent it, which does that mean? I mean, obviously, they had just suffered a big defeat. They didn't like the ruling. They didn't want to go forward with it. And they were very open, we're going to dismiss and refile. And then the same day they found that it is obviously a ploy to have a different decision-maker look at those issues again. And, you know, they got wiped from the slate. And as the Court of Appeal said, you know, some of Judge Lamelli's rulings track those originally made by Judge Dabney, but his rulings during the trial evolved with the testimony of the witnesses, reinforcing the similarity of the evidentiary rulings in this case to those concerned in the Riva case, which is discussed there. So, you know, they were clearly trying to get out from under this ruling and get a little bit more on this. So how can we take that as not clearly erroneous? Judge Abzug made this determination after hearing from the prosecutor. At the trial level, he's in the best position to make that determination. In response to the adverse ruling, but not made in order to circumvent, it was made in response to the adverse ruling because a lot of the evidence he intended to present was excluded. He said, on the record, he needed to refigure and retool his case. He was assuming that a lot of his evidence was excluded. He may have needed to rely on additional evidence. And the record does show he continued to have the wiretap conversations transcribed between the refiling and when the case ultimately went to trial. And further, what the record says, there's a lot of discussion about why he dismissed and refiled. He needed more time to refigure his case. And specifically relevant to why he filed in a different district, he said in his opposition to the motion to dismiss, he refiled in his assigned branch. The case was originally filed by a different district attorney in her assigned branch, the West District. This attorney took over. He refiled in his assigned branch, which is downtown. And there are a lot of not improper reasons for a prosecutor want to be at his assigned branch downtown. Counsel? Counsel, help me on something here. It strikes me that we're dancing around the issue instead of addressing it. And I must be missing something, if that's what I think. We're going on with how the prosecutor had all kinds of good reasons to dismiss and refile. And it wasn't for bad reason, like trying to get better ruling. And it seems just clear to me from what the prosecutor admitted that he dismissed and refiled so he could have a shot at getting a better ruling for his side of the case. And I've noticed that you have not addressed at all the questions that I raised with your adversary about whether, assuming that he did that, the prosecutor did anything that would make this outrageous conduct. Am I mistaken about thinking that to rise to the level of outrageous conduct that denies due process, something has to be a lot worse than just sharp practice or practice that manipulates venue in order to get a better ruling? Am I just missing the boat on that? Do we need to go with you that the prosecutor here was just trying to get a little more time to prepare his case, maybe, and there was nothing to his trying to get a better ruling? He really wasn't, and he got the same ruling. I completely agree with Your Honor. The motive of the prosecutor does not need to be decided because the state court reasonably found that even if it was improper motive, it didn't rise to the level of prosecutorial misconduct. That is because the petitioners can't... Would any prosecutorial misconduct rise to the level of outrageous conduct in denying due process? Well, certainly the Supreme Court has found that, for example, under Brady, the suppression of material evidence by a prosecutor does amount to a violation of due process. Is there a case like that addressing manipulating the opportunity to move the case into a venue with a better judge? Absolutely not. There is no such case. There is no... The Supreme Court has never addressed conduct like this. The Supreme Court has never found that forum shopping, should it be found, violates due process. The worst the Supreme Court has said about forum shopping is that it's disfavored. Far more is required to find misconduct rising to the level of due process violations. The prosecutor suffers an adverse ruling, and then the day after that the supervisors reassign the case to another DA who happens to be the daughter of the presiding judge over the case, who then is forced to recuse. Does that kind of... We have that kind of a scenario, would that violate due process as a manipulation of the proceedings? I believe if a constitutional violation could be found in that scenario, it would be the partiality of the judge. I'm not sure. The judge would then... The idea is they engineer the judge's recuse, force him off by changing who the lawyer is, force a recusal, and therefore get a new judge in the hopes of undoing those rulings. Would that kind of conduct, in your view, because the resulting trial is fair, that's all just fine? It would be... If the trial is fine, it's okay. I take it under your view that's just fine and we have to look the other way. Well, Your Honor, the standard for prosecutorial misconduct is that the conduct does have to render the trial fundamentally unfair, and in this scenario nor in that scenario is there a nexus between the conduct and the fairness of the trial. And I would like to address something about... I think it's related, and what counsel mentioned that the state court was prohibited from providing relief. That isn't the case. The same local rules that allow the case to be filed in different districts allows the trial court to transfer the case to any judicial district in the interest of justice. And when this case was refiled, petitioners almost immediately moved to have the case transferred back to the West District for forum shopping. And that intermediate trial judge could have, at that time, found that this is forum shopping or even the appearance of impropriety is not in the interest of justice and sent the case back to the West District. And it didn't do that. So it's not the case that the state court's hands were tied and their only relief is for this court to find that the action violated due process. I'd also like to address counsel's argument that the state court did not address the due process issue. In the state court's recitation of the law, they cite two California cases. But the California case specifically references the 14th Amendment of the federal constitution and recites the federal standard. So I think it's clear that they did address the due process claim. As I understand your argument, it's that when they got to the final analysis of explaining why they didn't find a problem, they basically said that absent a violation of state law procedures, we couldn't find misconduct. Is that correct under federal law, that you have to have a violation of state law in order to find? It's not required. The state court analysis is very short. I think it goes on to say that they do not find this action sufficient to rise to the level of prosecutorial misconduct. I think that takes care of the... It's very short. It's all in the same paragraph where your Honor was looking. Right after they say there's no case because it was in compliance with the local rules, it says, the next sentence, we cannot brand this refiling as misconduct sufficiently outrageous to warrant retrial. But if we cannot brand a permissible refiling, it seems to tie back again to this notion that, well, if state law lets you do this, we can't brand that as misconduct, and I'm not sure that that's the right legal standard. Well, if it didn't directly address it, I think it's presumed that they did address the due process claim just by the fact that it was raised before them and that the whole matter was denied. And so what's on review in the habeas court is whether that denial of the due process claim under the federal due process claim was an unreasonable application of clearly established Supreme Court precedent. And because there is none here, that's why their claim fails under EDPA. I would just also like to address prejudice that Judge Kleinfeld addressed. With regard to the conspiracy, the evidence was overwhelming. It was not puffery. The evidence shows Breed giving Pennington step-by-step instructions on how to go about murdering Dean, and she followed them. He directed her to contact two gang members about his killing, and she did. That failed. The notecards show he directed her to contact three different gang members, which she did. So just addressing petitioner's claim that that could be ambiguous or seen as puffery. Oh, I see I'm out of time. So if there are no further questions. Thank you. Thank you very much for your argument. Let's see. Oh, yes, we need to put two minutes on the clock for a little. Your Honors, I just very briefly want to clarify the record regarding the evidence on the Cowers homicide. Council suggested that effectively the courts were letting in the same evidence, and I think the record disproves that. What the initial court said, it did leave open a question about the Cowers evidence, but what they said is the court would consider allowing the fact that Mr. Cowers was killed in as evidence. That's an entirely different scenario than what ultimately happened at trial, which was not just the fact that he was killed, but crime scene photos, photographs of his dead body, a back story of where he was when Mr. Banks was killed, and a back story about what Jay Rock did to some unknown victim. That's what came in at trial, and what the initial court said was, I would never let anything beyond the fact that they left together, one ends up dead, the other one ends up dead an hour and a half later. I think those two evidentiary pictures are dramatically different. And again, just on the question of prejudice, all I can direct the court to is what the DA said, again, which is that his case against Mr. Green would be effectively gutted. There was no known motive that he would want to kill Mr. Dean, and as damning as some of the language in the wiretaps was, other of the language was at least confusing. I'm happy to answer any further questions. If there are no further questions, I'll just reiterate that something unfair happened here, Your Honor, and habeas does ultimately reside in equity, and so I'd encourage the court to bear that in mind as it's considering this case. Thank you. Thank you very much. The case just argued is submitted.
judges: KLEINFELD, WATFORD, COLLINS